UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

HEATHER M. PIKE,                )
                                )
        Plaintiff               )
                                )
v.                              )   No. 2:11-cv-78-JAW
                                )
MICHAEL J. ASTRUE,              )
Commissioner of Social Security,)
                                )
        Defendant               )

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the commissioner supportably found that the plaintiff had no severe medically determinable impairments. The plaintiff complains that the administrative law judge erred in (i) failing to find a severe impairment of fibromyalgia or myofascial pain, (ii) failing to find a severe impairment of plantar fasciitis, (iii) conducting a flawed evaluation of the effect of the plaintiff's obesity on her symptoms of severe pain, fibromyalgia, and plantar fasciitis, and (iv) finding the plaintiff only mildly limited in activities of daily living. *See* [Statement of Errors] (Docket No. 10) at [5]-[17]. I find no reversible error and, hence, recommend that the court affirm the administrative law judge's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. §§ 404.1520, 416.920); *Goodermote v. Secretary of Health & Human*

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on December 14, 2011, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

*Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had medically determinable impairments of asthma, chronic pain, and obesity, Finding 3, Record at 10; that she did not have any impairment or combination of impairments that had significantly limited, or was expected to significantly limit, her ability to perform basic work-related activities for 12 consecutive months and, therefore, did not have a severe impairment or combination of impairments, Finding 4, *id*.; and that she, therefore, had not been under a disability from June 20, 2008, her alleged onset date of disability, through October 29, 2010, the date of the decision, Finding 5, *id*. at 14.[2] The Decision Review Board selected the decision for review but failed to act within 90 days, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 405.420(a)(2); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*,

---

[2] The plaintiff is insured for purposes of SSD benefits through December 31, 2013. *See* Finding 1, Record at 9.

795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

### A. Failure To Find Severe Impairment of Fibromyalgia

The plaintiff first argues that the administrative law judge wrongly rejected diagnoses of fibromyalgia and/or myofascial pain syndrome made by treating source William Flewelling, N.P., and Disability Determination Services ("DDS") consulting examiner James Smith, D.O., and erroneously stated at the plaintiff's hearing that she could accept a diagnosis of fibromyalgia only if made by a rheumatologist. *See id.* at [6]-[10].

At the plaintiff's hearing, the administrative law judge inquired about who had first diagnosed the plaintiff with fibromyalgia. *See* Record at 28. The plaintiff stated that Flewelling had made the diagnosis. *See id*. The administrative law judge observed that Flewelling was neither a rheumatologist nor a doctor, but rather a nurse practitioner. *See id*. The plaintiff's attorney represented that Dr. Smith, the consulting examiner who is a doctor, had confirmed the diagnosis. *See id*. at 29. The administrative law judge indicated that only a diagnosis by a rheumatologist was acceptable. *See id*.

In her decision, the administrative law judge stated that the diagnosis of fibromyalgia was "not made in the record on any definitive basis[,]" noting that (i) beginning in September 2008, the plaintiff began complaining primarily of upper extremity muscular pain, (ii) she asked

3

Flewelling on April 13, 2009, whether she had fibromyalgia, but no such diagnosis was ever made and there was "no indication that the [plaintiff] has ever seen a rheumatologist or other qualified medical specialist who would be able to make such a diagnosis[,]" (iii) while the plaintiff has continued to complain of aches and pains primarily about her upper body, it was noteworthy that she felt well enough to work on a roof in January 2010, and, (iv) although Dr. Smith did note some tender points during his examination, he also found that the plaintiff had a full range of motion, concluded that her tenderness was not limiting, and stated that she was "able to work to full capacity." *Id*. at 11-12 (quoting *id*. at 273). She concluded: "There is absolutely no clinical data to support a diagnosis of fibromyalgia, or even of a severe musculoskeletal impairment." *Id*. at 12. She added: "That is not to say that the [plaintiff] has no symptoms or limitations; however, the record fails to establish that they cause anything more than slight limitations in her ability to perform basic work-related activities." *Id*. at 12-13.

At oral argument, counsel for the commissioner acknowledged that the administrative law judge erred in stating that only a rheumatologist is qualified to diagnose fibromyalgia. However, he argued persuasively that the error was irrelevant because there is no competent, clear diagnosis of that disease of record.

As counsel for the commissioner observed, the administrative law judge committed no error in rejecting any diagnoses by Flewelling of fibromyalgia or myofascial pain syndrome. Nurse practitioners are not among "acceptable medical sources" for purposes of establishing the existence of a medically determinable impairment. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a).

Further, as counsel for the commissioner argued, the administrative law judge supportably found that Dr. Smith had not made a definitive diagnosis of fibromyalgia. Dr. Smith stated, in relevant part: "[The plaintiff] has tender points for fibromyalgia over her suboccipital

4

cervical spine, supraspinatus, anterior costochondral margins, the iliac crests bilaterally, medial aspects of the knee bilaterally and ankles, however, this is not limiting." *Id*. at 273. "She is able to work to full capacity." *Id*. In so stating, he reported symptoms or signs consistent with fibromyalgia, but did not actually diagnose it. *See id*. It is not clear that Dr. Smith's tender point findings meet the American College of Rheumatology diagnostic criteria for fibromyalgia, which "include pain on both sides of the body, both above and below the waist, as well as in an axial distribution (cervical, thoracic, or lumbar spine or anterior chest); additionally there must be point tenderness in at least 11 of 18 specified sites." Stedman's Medical Dictionary 671 (27th ed. 2000).

In any event, even if Dr. Smith meant to diagnose fibromyalgia, he found that the condition imposed no work-related limitations. *See* Record at 273. Tellingly, Lawrence P. Johnson, M.D., a DDS nonexamining consultant, found, with the benefit of review, *inter alia*, of Dr. Smith's report, that the plaintiff had no medically determinable impairment that significantly limited her physical activity. *See id*. at 295-96. Thus, Dr. Smith's report supports the ultimate finding of a nonsevere impairment.

### B. Failure To Find Severe Impairment of Plantar Fasciitis

The plaintiff next faults the administrative law judge for concluding that her plantar fasciitis was nonsevere, pointing to evidence that (i) she first complained of pain and tenderness in her right foot, diagnosed as plantar fasciitis, on February 19, 2007, (ii) Dr. Smith agreed, following his September 18, 2008, consulting examination, that her plantar fasciitis was "a problem," (iii) she complained to podiatrist Barry White, D.P.M., on May 18, 2010, that she had suffered from bilateral heel and arch pain for 12 months, despite previous attempts at self-care that included Advil, stretching, and icing, (iv) pain in her ankles was among the reasons that she

5

stopped work as a cleaner at Allstate Cleaning on July 24, 2008, and after two weeks as a temporary employee for Bonney Staffing in a printer shop, and (v) she testified that, despite treatment prescribed by Dr. White, she continues to experience pain in both feet that can travel up the back of her legs. *See* Statement of Errors at [11]-[12].

The administrative law judge found the plaintiff's plantar fasciitis condition nonsevere, citing to medical records indicating that the condition improved with treatment, as well as the finding by Dr. Johnson of DDS that the plaintiff had not established the existence of any limitations stemming from alleged physical impairments. *See* Record at 11-13.

The finding of nonseverity is supported by substantial evidence. While Dr. Smith did describe the plaintiff's plantar fasciitis as a "problem[,]" he did not explain how, or list any resulting functional limitations. *Id*. at 273. Moreover, Dr. Smith stated that the plaintiff "was able to ambulate across the parking lot, open her car door [to] get into the driver's side and drive off without difficulty." *Id*. at 272. In a physical residual functional capacity ("RFC") assessment dated September 28, 2009, Dr. Johnson, who had the benefit of review of Dr. Smith's report, found that the plaintiff had not established that her physical impairments caused any limitations. *See id*. at 289-96.

Moreover, the plaintiff told Kristie Dailey, F.N.P., on August 1, 2008, that she was working in a warehouse, did not have foot pain at that time, and, when she did, she did exercises that helped. *See id*. at 249.

Dr. White, the podiatrist, did note on May 18, 2010, that the plaintiff presented to his office with a chief complaint of bilateral heel/arch pain, with gradual progression over the prior 12 months, and pain first thing in the morning as well as with ambulation or standing for long periods of time. *See id*. at 337. He prescribed conservative treatment including instructions for

stretching and icing two to three times daily and the use of night splints and orthotic inserts for biomechanical support. *See id*. at 338. On May 25, 2010, the plaintiff reported to Flewelling that, after being fitted with orthotics, she believed that she had noticed some improvement in how her feet and legs were feeling. *See id*. at 362. By June 8, 2010, Dr. White noted that the plaintiff's condition was improved and that she was wearing and tolerating her orthotics well and had been stretching, icing, and wearing the night splints as instructed. *See id*. at 336. On examination, he found "minimal residual pain upon palpation plantar medial calcaneal tubercle/plantar fascia, bilaterally" and no pain upon palpation of other regions of the foot or ankle. *See id*. He diagnosed chronic plantar fasciitis – bilateral (resolving). *See id*. During an office visit with Flewelling on August 25, 2010, the plaintiff voiced no acute complaints concerning foot pain. *See id*. at 354.

The administrative law judge, thus, supportably deemed the plaintiff's plantar fasciitis nonsevere.

### C. Improper Obesity Analysis

The plaintiff next complains that the administrative law judge failed to evaluate her obesity in the manner required by Social Security Ruling 02-1p ("SSR 02-1p"). *See* Statement of Errors at [12]-[14]. Specifically, she complains that, while the administrative law judge acknowledged her weight gain, she made no attempt to assess the impact of her obesity in combination with her other impairments, for example, whether her combined impairments, including obesity, would have met or equaled a so-called "Listing" and the impact of her obesity on her residual functional capacity. *See id*.

Yet, the plaintiff does not explain how, had obesity been taken into account, it would have made any difference. *See id*. She identifies no restrictions or limitations evidenced in the record that

7

were omitted. *See id.* Even assuming error in the administrative law judge's discussion of obesity, that is an inadequate showing for reversal and remand. *See, e.g., Drew v. Astrue*, Civil No. 09-363-B-W, 2010 WL 1946335, at *4-*5 (D. Me. May 12, 2010) (rec. dec., *aff'd* June 4, 2010); *Bolduc v. Astrue,* Civil No. 09–220–B–W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010).

### D. Finding of Mild Limitation in Activities of Daily Living

The plaintiff finally complains that the administrative law judge erred in finding her only mildly limited in activities of daily living. *See* Statement of Errors at [15]-[17]. She argues that the administrative law judge wrongly concluded that she lived independently, cared for herself and her three children without assistance, and performed household chores, ignoring her testimony at hearing that she routinely required and received help cleaning, shopping, and performing other daily activities from her sister and sometimes from her oldest daughter. *See id*.

In finding the plaintiff no more than mildly limited in activities of daily living, the administrative law judge stated: "She lives independently, cares for herself and three children without assistance, takes her medication without reminders, cares for her personal needs, drives, shops, keeps her appointments and performs household chores." Record at 13. In so finding, the administrative law judge omitted any mention of the plaintiff's testimony at hearing that her sister came to her house almost every other day to help with housework or child care and that her oldest daughter also sometimes had to assist her. *See id*. at 30-31.

Nonetheless, the error is harmless. In the portions of the hearing transcript on which the plaintiff relies, *see* Statement of Errors at [15]-[16], she ascribed her restrictions in vacuuming, scrubbing toilets, shopping, and other activities primarily to physical pain, *see* Record at 30-31, 38, 41-42. The administrative law judge's finding of only mild restrictions in activities of daily living addressed restrictions attributable to the plaintiff's *mental* impairment(s). *See id*. at 13.

As the administrative law judge noted, *see id*., DDS nonexamining consultant Peter G. Allen, Ph.D., found that the plaintiff had a mood adjustment disorder imposing only mild restrictions in her activities of daily living, *see id*. at 277, 284 (Psychiatric Review Technique Form dated September 28, 2009). The plaintiff offers no reason why this expert assessment cannot stand as substantial evidence of the extent of the restriction in her activities of daily living attributable to any mental impairment. *See* Statement of Errors at [15]-[16].

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 12th day of January, 2012.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge